### GALBAN LOBO CO., S. A., v. HENDERSON.

### No. 3.

United States Emergency Court of Appeals.

Heard Oct. 20, 1942.

Decided Nov. 19, 1942.

Writ of Certiorari Denied Feb. 1, 1943.

See —— U.S. ——, 63 S.Ct. 530, 87 L.Ed. ——.

Donald Marks, of New York City (Julius B. Baer, of New York City, on the brief), for complainant.

Ben W. Heineman, Chief, Court Review Branch (David Ginsburg, Gen. Counsel, Thomas I. Emerson, Associate Gen. Counsel, Nathaniel L. Nathanson, Asst. Gen. Counsel, Herbert C. Brook, and John O. Honnold, Jr., Attys., all of Office of Price Administration, all of Washington, D. C., on the brief), for respondent.

Before VINSON, Chief Judge, and MARIS and MAGRUDER, Judges.

MARIS, Judge.

In this case Galban Lobo Co. S. A. complains of the dismissal by the Price Administrator of its protest against Revised.

Price Schedule No. 16, Raw Cane Sugar. The Price Administrator held that the protest was not filed within 60 days after the grounds of protest arose and accordingly dismissed it as too late without considering the merits. The protest was filed on June 1, 1942. The question which we are called upon to decide is whether the grounds of protest arose more than 60 days prior to that date. For while those provisions of Section 203(a) of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 923(a), which prescribe the time within which to file a protest based on grounds arising after the effective date of a price schedule are, to say the least, imperfectly expressed, both parties agree that it is the intention of the act to grant for that purpose a period of 60 days from the time when the grounds of protest arose. The complainant, as we shall see, contends that the grounds of protest in its case arose on May 4th, or at the earliest April 9th, both being within 60 days of June 1st. According to the Price Administrator's view they arose on March 16th, a date more than 60 days prior to June 1st. Literally construed the statute would have required a protest to the price schedule in question on grounds arising on March 16th to have been filed not later than April 12th, 60 days after the effective date of the schedule. For the purposes of this case, however, we may accept the parties' more liberal interpretation since even upon that view of the act the protest was filed too late if the Price Administrator is correct as to the time when the grounds of protest arose.

Revised Price Schedule No. 16 became effective February 11, 1942. It prescribed a maximum price for raw cane sugars of 96° polarization from offshore producing areas landed at New York, of 3.74 cents per pound "duty paid cost and freight basis." On February 28th the complainant, a Cuban corporation, entered into a contract to sell 12,205 bags of sugar to the American Sugar Refining Company at 2.65 cents per pound, F.A.S.[1] Puerto Tarafa, Cuba. The contract price was the Cuban equivalent at that time of the established maximum price of 3.74 cents per pound "duty paid cost and freight basis" New York. On March 12th the War Shipping Administration issued Rate Order No. 12, effective March 16th, which authorized a 22% surcharge on ocean freight rates for transporting sugar from Cuba to United States Atlantic and Gulf ports.

The contract provided that the sugar should be shipped per S. S. Yildum, "expected to commence loading about March 13th to March 16th, 1942, to New York, Philadelphia, or Baltimore." The S. S. Yildum was delayed, however, and did not arrive at Puerto Tarafa for loading until the latter part of March. She was loaded on March 30th and sailed April 4th. The complainant alleges that on or about April 9th the Refining Company refused to pay the contract price of 2.65 cents per pound on the ground that Revised Price Schedule No. 16 required a reduction of the F.A.S. price by an amount equal to the 22% freight surcharge authorized by the War Shipping Administration.

On April 22d complainant's New York agent and the Refining Company jointly addressed a letter to the Office of Price Administration asking whether, without violating Revised Price Schedule No. 16, the Refining Company could pay complainant 2.65 cents per pound for the sugar. On May 4th an assistant general counsel for the Office of Price Administration addressed a letter to complainant's agent and the Refining Company advising them that the 22% surcharge was "freight" within the meaning of the term "cost and freight" in Revised Price Schedule No. 16, and that under the Price Schedule, the Refining Company could not pay the 22% surcharge without a proportionate decrease in the contract price since it would result in a payment in excess of 3.74 cents per pound, cost and freight basis, New York. On June 1st the complainant filed a protest against this interpretation and application of the provisions of Revised Price Schedule No. 16. The protest was dismissed on July 1st and the present complaint was filed in this court within 30 days thereafter.

It is the Price Administrator's contention that the complainant's grounds of protest arose on March 16, 1942 when the order of the War Shipping Administration which advanced the freight rates on sugar shipped from Cuba to United States ports became effective. He says that under Revised Price Schedule No. 16 this order became immediately applicable to the sugar about to be shipped under the then existing con-

[1] "F. A. S. vessel" means free alongside, and obliges the seller to pay all charges and be subject to risk until the goods are placed alongside of the vessel either in a lighter or on the wharf. 1 Williston, Sales, 2d Ed., 620.

tract between the complainant and the Refining Company and consequently if its application thereto was objectionable the complainant from that date had grounds for protest. The complainant, on the other hand, argues that the application of the freight rate increase of March 16th to its contract of February 28th was not clearly indicated by the terms of Revised Price Schedule No. 16, but that the schedule was at best ambiguous in this respect. Therefore, it says, it did not have grounds to protest the application of the War Shipping Administration's order through the Revised Price Schedule to its sale of sugar until the Price Administrator through his assistant general counsel clarified its application thereto in the letter of May 4th. It further contends that, at the very earliest, it had no grounds for protest prior to the refusal of the Refining Company on April 9th to assume the increase in the freight.

 The Price Administrator conceded in argument that "an interpretation resolving an ambiguous provision of a price schedule or regulation might constitute a new ground for protest," and asserted that whether or not it does constitute a new ground will in each case be a question of fact. With this interpretation of Section 203(a) of the act we agree. The decisive question, therefore, is whether the provisions of Revised Price Schedule No. 16 unambiguously required the application of the War Shipping Administration's freight rate increase to the complainant's sale of sugar to the extent of reducing by the amount of that increase the F.A.S. price which it was entitled to receive for the sugar sold. After full consideration we have reached the conclusion that the schedule was sufficiently clear to put the complainant on notice, when the increase in freight rates was ordered, that the amount of the increase would be deductible from the sale price of the sugar sold by it to the Refining Company.

Section 1334.1 of Revised Price Schedule No. 16 provides that "regardless of the terms of any contract of sale or purchase, or other commitment * * * no person shall sell, offer to sell, deliver, or transfer raw cane sugars to any person, and no person shall buy, offer to buy, or accept delivery of raw cane sugars from any person, at prices higher than the maximum prices set forth in Appendix A, * * * These prices are gross prices before discounts of any nature are deducted, and they include all commissions and all other charges." Appendix A, designated as Section 1334.9 of the Schedule, provides that "(a) Maximum prices per pound for raw cane sugars from offshore producing areas of 96 degrees polarization duty paid cost and freight basis shall be as follows: (1) United States Atlantic ports North of Cape Hatteras to and including New York, 3.74 cents * * *." [2] In the light of the economic emergency which the Price Control Act was designed to meet and of the provisions of the act itself we think it is clear that the price schedule now before us was intended to limit the overall price, including freight and duty, which the purchaser of raw cane sugars may pay for them. It is the total cost to the purchaser rather than the portion of that cost which is attributable to the seller which is of crucial importance. The direction is that regardless of the terms of any contract no person shall buy or accept delivery of raw cane sugars at prices higher on a duty paid *cost and freight* basis than those specified.

We think that Revised Price Schedule No. 16 plainly prohibits a purchaser of raw cane sugars from paying for cost, freight and duty combined more than the maximum price specified in the schedule, without regard to his contractual obligation. While the schedule does not expressly deal with purchases on the F.A.S. basis such purchases are impliedly included within its purview, since the cost free alongside the ship which is to carry the sugar to a United States port is a definitely ascertainable element in the aggregate cost and freight price with which the schedule deals. Consequently the determination of the F.A.S. maximum price involves merely the deduction from the duty paid cost and freight price of the constituent elements of duty and freight. That this was obvious to the complainant appears from its action in determining in exactly this way the F.A.S. price at which it sold its sugars to the Refining Company.

The complainant argues, however, that it was not so obvious that a subsequent increase in freight rates by governmental action would under the schedule necessarily reduce its F.A.S. price even though that price was wholly in accord with the schedule when the contract of sale was made.

---

[2] 7 Fed.Reg. 1239.

It points out that it is of the essence of the F.A.S. form of contract that the cost of transportation thereafter shall be at the responsibility and risk of the buyer, and it urges that the interpretation placed upon the operation of the schedule by the Price Administrator not only required it to follow up and protest the effect of an increase in freight rates with which under its contract it had no concern, but in addition nullified a fundamental element of the contract itself, namely, that such increases should never be at its risk. The complainant, however, was bound to take notice of the express declaration of the price schedule that its mandate was to be observed "regardless of the terms of any contract of sale or purchase." That mandate was that no New York purchaser of raw cane sugar from an offshore producing area should pay for duty, cost and freight more than 3.74 cents per pound. Consequently when on March 16th the freight increased 22% it should have been obvious to the complainant that the F.A.S. cost price which it was to receive would have to be reduced by the same amount if the mandate of the price schedule was to be observed by the purchaser.

It is true that on March 16th the sugar had not yet been loaded. It does not follow, as the complainant suggests, that the question whether under the price schedule the freight increase of that date must be borne by the complainant was for that reason then merely a hypothetical one. On the contrary the complainant was then in the business of selling Cuban sugar for import into the United States and was actually under contract to deliver sugar at ship's side at Puerto Tarafa for transportation to New York. It was clearly under the duty of taking notice of all provisions of price schedules, regulations or orders affecting that business and that contract. Among these were the provisions of Revised Price Schedule No. 16 as affected by the order increasing freight rates. It was likewise under the necessity of filing its protest with the Price Administrator within 60 days if it thought that the resulting imposition upon it of the cost of the increase was for any reason improper. We conclude that the complainant's grounds of protest arose on March 16, 1942 and that its protest filed June 1, 1942 was rightly dismissed by the Price Administrator as out of time under Section 203(a) of the act. This conclusion makes it unnecessary to consider the other contentions advanced by the complainant.

The complaint is dismissed.