**UTAH JUNK CO. v. BOWLES,**
**Price Adm'r.**
**No. 184.**

United States Emergency Court of Appeals.
Heard at Washington July 14, 1945:

Decided Aug. 6, 1945.

Writ of Certiorari Granted Nov. 5, 1945.

See 66 S.Ct. 139.

Keith L. Seegmiller, of Washington, D. C. (Ernest L. Wilkinson, of Washington, D.C., on the brief), for complainant.

Jacob D. Hyman, Asst. Gen. Counsel, of Washington, D. C. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, Carl H. Fulda and John J. Downey, Jr., Attys., of the OPA, all of Washington, D. C., on the brief), for respondent.

Before MAGRUDER, McALLISTER, and LAWS, Judges.

PER CURIAM.

Complainant, a junk dealer, operates in and around Salt Lake City, Utah. Its operations involve the processing of heavy scrap metal into pieces of small size, known as fluxing scrap, suitable for lead smelting. In this case it challenges the validity of Revised Price Schedule No. 4 by which ceil-ing prices were established for iron and steel scrap, on the ground that the Schedule failed to permit an allowance for the extra cost of processing fluxing scrap.

Maximum prices for iron and steel scrap were first established by Price Schedule No. 4, issued on April 2, 1941, under executive authority. 6 F.R. 1767. After the enactment of the Emergency Price Control Act of 1942, 50 U.S.C.A. Appendix § 901 et seq., that Schedule was reissued, pursuant to the Act, as Revised Price Schedule No. 4, Iron and Steel Scrap, and republished on February 21, 1942. 7 F.R. 1207. As originally issued the Revised Schedule permitted no allowance for the processing of heavy scrap into fluxing scrap. However, on December 21, 1943, an allowance of $1.50 per gross ton for such processing was made available upon application to a Regional Office of the Office of Price Administration. Complainant made application for the allowance in January, 1944; the application was granted as to future sales by the Salt Lake City office in February, 1944; and the granting of the application was confirmed by the national office on April 5, 1944. On June 30, 1944, the Schedule was revised and reissued as Maximum Price Regulation No. 4, so as to permit the allowance for processing, as to future sales, without the need for special application.

From April 25, 1942, to February 10, 1943, a period during which no allowance for processing was permitted, complainant sold a substantial amount of fluxing scrap to United States Smelting Refining & Mining Company. Complainant collected only the ceiling price permitted, but billed the Company at a rate which included a charge for preparation of the fluxing scrap, apparently with the expectation that if the regulation were subsequently held invalid, the Company would pay the additional charges. On August 7, 1944, complainant filed its protest against the Schedule. Upon the denial of that protest, the present complaint was filed.

Complainant makes no objection to the amount of allowance authorized by the regulation, nor does it object to the regulation on the ground that it failed to grant the $1.50 allowance retroactively. But complainant asserts that, if the invalidity of the Schedule is established, the Smelting Company is willing to pay, for the sales between

964

April 25, 1942, and February 10, 1943, a sum equivalent to $1.50 per gross ton processing charge. In this proceeding, therefore, complainant seeks to establish that Revised Price Schedule No. 4 was invalid during that time.

In the case of Thomas Paper Stock Co., et al. v. Bowles, Em.App. 1945, 148 F.2d 831, 837, certiorari granted 65 S. Ct. 1409, this Court, by a majority decision, committed itself to the proposition that an "objection was not available to or properly included by the complainants in their protest to the Administrator because it involved a ground of invalidity which did not exist when the protest was filed, having admittedly been corrected * * * by the Administrator" prior to the filing of the protest. In this case complainant concedes that at the time its protest was filed the form of the regulation was unobjectionable to it. However, it attempts to distinguish its situation from that in the Thomas Paper Stock case. It argues that its interest in a premium for processing was made known to the Administrator as early as May, 1942, and was continually pressed thereafter by way of informal negotiations, so that there was actually a protest before the Administrator prior to the granting of the processing allowance. Complainant points also to what it asserts to have been a formal protest filed by the Smelting Company in November, 1943, by which that Company sought leave to pay the additional charge. Complainant argues that it should have the benefit of that protest. There is no merit to either of these contentions. Revised Procedural Regulation No. 1 issued under the authority of Section 203(a) of the Act, 50 U.S.C.A. Appendix § 923(a) establishes a formal procedure for the filing of protests. The Administrator cannot be expected to carry out the difficult task assigned to him if protests are permitted to be filed on an informal basis. As to the alleged protest filed by the Smelting Company the Administrator denies the Smelting Company filed a protest, asserting that it was a petition for amendment. In any event persons may not be treated as parties to a protest unless the language of the protest clearly indicates such intention. Cf. Bowman Realty Co. v. Bowles, Em.App., 1944, 140 F.2d 974, certiorari denied 322 U.S. 742, 64 S.Ct. 1144, 88 L.Ed. 1575. We think complainant has failed to distinguish its situation from that of complainants in the Thomas Paper Stock case.

Until and unless our opinion in that case is overruled, it stands as the controlling law. The complaint in this case accordingly will be dismissed.