**CHARLES R. KRIMM LUMBER CO. et al. v. TURNEY, Director, Division of Liquidation, Department of Commerce.**

**No. 449.**

United States Emergency Court of Appeals. Heard at New York City Jan. 24, 1948.

Decided May 14, 1948.

Arthur G. Warner, of New York City, for complainants.

Josephine H. Klein, Sp. Atty., of Washington, D. C. (Tom C. Clark, Atty. Gen., T. Vincent Quinn, Asst. Atty. Gen., and Floyd L. Cook and Charles G. Mulligan, Attys., Department of Justice, and Irving R. Pressman, Gen. Counsel, and Samuel M. Singer, Atty., both of Division of Liquidation, Department of Commerce, all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

In this complaint, filed pursuant to § 204(a) of the Emergency Price Control Act of 1942, 56 Stat. 31, 50 U.S.C.A.Appendix, § 924(a), Charles R. Krimm Lumber Co., and the individual complainants, set forth that they are aggrieved by an order issued by the Director, Division of Liquidation, Department of Commerce, on October 24, 1947, dismissing their protests against the validity of provisions of Maximum Price Regulation 368—Northeastern Hardwood Lumber, issued April 16, 1943 (8 F. R. 4968).

Respondent gave no consideration to the merits of the protests, but dismissed them on the ground of laches. In so doing he borrowed, and gave what to us is a wholly novel application of, a doctrine which has long obtained in courts of equity. "The doctrine of courts of equity to withhold relief from those who have delayed the assertion of their claims for an unreasonable length of time is thoroughly settled. Its application depends on the circumstances of the particular case. It is not a mere matter of lapse of time, but

of change of situation during neglectful repose, rendering it inequitable to afford relief." O'Brien v. Wheelock, 1902, 184 U.S. 450, 493, 22 S.Ct. 354, 370, 46 L.Ed. 636. See Holmberg v. Armbrecht, 1946, 327 U.S. 392, 396, 66 S.Ct. 582, 90 L.Ed. 743, 162 A.L.R. 719; 4 Pomeroy, Equity Jurisprudence (4th ed. 1919) § 1442. It is certainly not true as a general proposition, that an administrative agency has inherent discretionary power to decline to perform a statutory function, where the application for administrative action, though made within the statutory time limit, has been unnecessarily delayed and as a result of the delay the administrative agency now deems the performance of the administrative function to have become unduly burdensome, by reason of reduction of staff or otherwise. Such a discretionary power may, of course, be conferred by legislative act. But, in the case before us, we have been unable to find any statutory warrant for the asserted power, either expressly or by fair implication.

On October 2, 1944, the Price Administrator filed in the United States District Court for the Middle District of Pennsylvania a treble damage action under § 205 (e) of the Emergency Price Control Act against the present complainants, charging that the corporate complainant had sold lumber at prices in excess of those established by MPR 368 and that the individual complainants were also liable therefor as officers and directors of the corporation. That enforcement action is still pending. One of the defenses sought to be raised therein was that the applicable provisions of MPR 368 were invalid. Were it not for the unique provisions of the Emergency Price Control Act, 50 U.S. C.A.Appendix, § 901 et seq., however long delayed the trial of the treble damage action might be, and however inconvenient it might become to the Price Administrator (or his successor) to assemble the economic data and other evidence in support of the validity of the regulation, the Administrator in pressing the enforcement action would have had to meet that defense of invalidity on the merits in the district court. There would have been no question of "laches".

But § 204(d) of the Act withdrew from the district court all jurisdiction or power to consider the validity of the regulation, and vested such jurisdiction exclusively in the Emergency Court of Appeals, and in the Supreme Court upon certiorari to that court. As the Act was originally drawn, the only way to obtain a judicial determination of the validity of a regulation was, first, to file a protest with the Price Administrator under § 203(a), and then, if the protest was denied, to file a complaint in the Emergency Court of Appeals under § 204(a). Except where the grounds of protest arose subsequently, the protest had to be filed within sixty days after the issuance of the regulation; otherwise a person subject to the regulation lost all right to challenge its validity, even as a defense to a criminal prosecution. The constitutionality of these provisions was sustained in Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.

By the Stabilization Extension Act of 1944, 58 Stat. 632, Congress considerably relaxed these strict provisions of the Emergency Price Control Act. Section 203(a) was amended so as to permit the filing of a protest "at any time" after the issuance of a regulation. In Utah Junk Co. v. Porter, 1946, 328 U.S. 39, 66 S.Ct. 889, 90 L. Ed. 1071, the Supreme Court ruled that the phrase "at any time" meant what it said, remarking (at page 44 of 328 U.S., at page 892 of 66 S.Ct.) that, "in construing a definite procedural provision we do well to stick close to the text and not import argumentative qualifications from broad, unexpressed claims of policy." Also, by the Stabilization Extension Act of 1944, there was added a new subsection (e) to § 204 of the Price Control Act. Section 204(e) provided an alternative route to the Emergency Court of Appeals: A defendant in a civil or criminal enforcement suit might apply to the enforcement court for leave to file directly in the Emergency Court of Appeals a complaint against the Price Administrator setting forth objections to the validity of the regulation which the defendant is alleged to have violated, and the enforcement court was directed to grant such leave with respect to any objection which it found was made in good

faith and with respect to which it found there was reasonable and substantial excuse for the defendant's failure to present such objection in a protest filed in accordance with § 203(a). Section 204(e) further made detailed provision for a mandatory stay of civil or criminal enforcement proceedings to await determination of the validity of the regulation, either in a pending protest proceeding with possible ensuing complaint in the Emergency Court of Appeals under § 204(a), or as the outcome of a complaint filed directly in the Emergency Court of Appeals under § 204(e) by leave of the enforcement court. In addition, § 204(e) (2) provided that, if any provision of a regulation "is determined to be invalid by judgment of the Emergency Court of Appeals * * * any proceeding pending in any court shall be dismissed, and any judgment in such proceeding vacated, to the extent that such proceeding or judgment is based upon violation of such provision."

As the law stood when the afore-mentioned enforcement suit was filed against complainants in October, 1944, they might have proceeded in either of two ways to procure an adjudication of the validity of the regulation: (1) Not having theretofore filed a protest, they might, within five days after judgment against them in the civil enforcement suit, have applied to the enforcement court for leave to file a complaint in the Emergency Court of Appeals under § 204(e), and if the court had granted such leave, it would have been accompanied by a mandatory stay of the enforcement proceeding as provided in § 204(e) (2) (i) and (iii); or (2) they might have filed a protest "at any time" under section 203(a),[1] though in this latter case they would not have been entitled to a stay of the enforcement proceedings, either before or after judgment, on account of the pendency of the protest proceedings, because a stay might be granted under § 204(e) (2) (ii) only where the protest had been filed prior to the institution of the enforcement proceeding. Complainants thus ran a certain risk under either of these alternatives. Under the first, they ran the risk that the enforcement court might deny them leave to file a complaint in the Emergency Court of Appeals under § 204(e), because the enforcement court might conclude either that the objections to the regulation had not been advanced in good faith or that there was no reasonable and substantial excuse for the defendant's failure to have presented such objection in a protest under § 203(a). Under the second, they ran the risk that even if, as a result of the protest proceeding and an ensuing complaint in the Emergency Court of Appeals under § 204(a), they should obtain a judgment of the Emergency Court of Appeals determining the regulation to be invalid, this judgment might come too late to do them any good in the enforcement proceeding. If on the date of the judgment of the Emergency Court of Appeals the enforcement proceeding was no longer pending, either in the district court or, we take it, on appeal, the judgment in the enforcement proceeding could not be reopened so as to give retroactive effect to a judgment of the Emergency Court of Appeals declaring the regulation to be invalid, for the concluding clause of § 204(e) read that, except as provided in this subsection, no retroactive effect should be given to any judgment setting aside a regulation or order under § 2. This clause referred back to the preceding sentence in the subsection stating that, if any provision of a regulation is determined to be invalid by judgment of the Emergency

---

[1] Section 26(a) of Revised Procedural Regulation No. 1 (9 F.R. 10476) provided: "A protest against a provision of a maximum price regulation may be filed at any time after the issuance thereof." The Procedural Regulation thus failed to give notice of the important qualification now asserted to have been all along implied in § 203(a) of the Act, namely, that a protest might be dismissed by the Price Administrator for laches if not filed with due diligence. The above provision of Procedural Regulation No. 1 remained in effect until superseded by Liquidation Procedural Regulation No. 1 issued September 4, 1947 (12 F.R. 5910), which provided in § 11.905 that "any protest filed after undue delay" might be "dismissed by the Director without consideration on the merits." Cf. R. E. Schanzer, Inc. v. Bowles, Em.App., 1944, 141 F.2d 262, 265. Complainants filed their protests on September 26, 1947.

Court of Appeals, "any proceeding *pending* in any court shall be dismissed, and any judgment in *such* proceeding [*i.e.*, a proceeding pending in any court] vacated, to the extent that such proceeding or judgment is based upon violation of such provision." [Italics added.] These risks the complainants faced because of their failure to invoke promptly the administrative remedy of a protest under § 203(a), which could have been filed right after the issuance of the regulation without waiting for the institution of enforcement proceedings. Cf. Yakus v. United States, supra.

As above indicated, complainants had not filed a protest when the enforcement suit was filed. Apparently they had not deemed it necessary to do so because, as they interpreted the regulation, they were in compliance with it—a defense the enforcement court was empowered to entertain. But without waiting for a determination of this question of interpretation in the enforcement court, they could have filed a protest against the regulation as interpreted by the Price Administrator, with a view to obtaining a determination of the validity of the regulation if their asserted interpretation of it should prove to be erroneous. See our discussion in Conklin Pen Co. v. Bowles, Em.App., 1946, 152 F.2d 764.

The enforcement action dragged on, in proceedings not necessary to state here. Meanwhile, on November 12, 1946, by Supplementary Order No. 193, lumber, along with most other commodities, was decontrolled (11 F.R. 13464). On December 12, 1946, the President, by Executive Order 9809, 50 U.S.C.A.Appendix, § 601 note, 11 F.R. 14281, transferred the functions of the Price Administrator to the Office of Temporary Controls. On June 1, 1947, by Executive Order 9841, 50 U.S.C.A.Appendix, § 601 note, 12 F.R. 2645, the Office of Temporary Controls was terminated, and its liquidating functions with relation to price control were transferred to the Secretary of Commerce, who, by Department Order 75, delegated them to the Director of the Division of Liquidation, Department of Commerce, the respondent herein. On June 30, 1947, the Price Control Act terminated, as provided in § 1(b), as amended,

"except that as to offenses committed, or rights or liabilities incurred, prior to such termination date, the provisions of this Act and such regulations, orders, price schedules, and requirements shall be treated as still remaining in force for the purpose of sustaining any proper suit, action, or prosecution with respect to any such right, liability, or offense."

Thus the Division of Liquidation had cast upon it the function of processing protests under § 203(a) of the Price Control Act, where the protestant still had an interest in establishing the past invalidity of a price regulation as a defense to a civil or criminal enforcement action based upon alleged violations occurring while the regulation was in force.

On July 30, 1947, Congress enacted the Supplemental Appropriation Act, 1948, Public Law 271, 80th Cong., 1st Sess., which provided funds to the Department of Commerce for liquidating the Office of Price Administration. When this appropriation act was before Congress it was contemplated that a certain number of additional protests might still be filed, since protests under § 203(a) could be filed "at any time". In the interest of a more speedy liquidation, Congress deemed it wise to put time limitations upon new challenges to the validity of price regulations. Accordingly, in the said appropriation act, it added a proviso to the first sentence of § 203 (a) of the Price Control Act:

"Provided, however, That a protest setting forth objections to any provisions of such *regulation, order, or price schedule* with respect to which responsibility was transferred to the Department of Commerce by Executive Order 9841 may not be filed more than one hundred and twenty days after issuance of such regulation, order, or price schedule or sixty days after the enactment of this amendment, whichever is the later."

Also, the first sentence of § 204(e) was amended to read as follows:

"Within sixty days after the date of enactment of this amendment, or within sixty days after arraignment in any criminal proceedings and within sixty days after commencement of any civil proceed-

ings brought pursuant to section 205 of this Act or section 37 of the Criminal Code, involving alleged violation of any provision of any regulation or order issued under section 2 or alleged violation of any price schedule effective in accordance with the provisions of section 206 with respect to which responsibility was transferred to the Department of Commerce by Executive Order 9841, * * * the defendant may apply to the court in which the proceeding is pending for leave to file in the Emergency Court of Appeals a complaint against the Administrator setting forth objections to the validity of any provision which the defendant is alleged to have violated or conspired to violate."

Thus, upon the enactment of the Supplemental Appropriation Act, 1948, on July 30, 1947, these complainants, in order to procure a judicial determination of the validity of MPR 368, had these alternatives: (1) They might within sixty days apply to the district court for leave to file a complaint in the Emergency Court of Appeals under § 204(e), or (2) they might within sixty days file a protest with the Division of Liquidation under § 203(a), without benefit of a stay of the enforcement suit.

On September 26, 1947, they elected to proceed by the second of these alternatives, and filed their protests with the Division of Liquidation. Accompanying his order of October 24, 1947, dismissing the protests on the ground of laches, respondent filed an opinion in which he pointed out that the "protests herein were filed about three years after the commencement of the enforcement suit and after the challenged provisions had been in existence for a number of years, in some cases at least since the issuance of the regulation about four and one-half years previously." He concluded that protestants had not furnished adequate excuse for this delay. Further the opinion stated:

"It is apparent that review of the validity of MPR 368 in this de novo protest proceeding entails an analysis of the lumber regulation; and a study of the pricing and business practices and methods of the industry. Pursuant to Congressional mandate this office is at present engaged in liquidating the functions of the OPA. Expert personnel, including personnel formerly administering the lumber regulations, are no longer with this office. Records and information previously available to the Price Administrator are no longer available.* To require the Director of the Division of Liquidation at this late date through curtailed personnel and funds, to review protests filed after unreasonable delay would impose an onerous burden upon the present staff that might well be beyond its capabilities. Clearly, Protestant should have, and could have, availed itself of administrative review of validity before the facilities for such review became more limited with the passage of time."

We have every sympathy with respondent in his administrative problems. But if Congress desires these enforcement actions to be pressed, as legally they may be notwithstanding the termination of price control, it must be assumed that Congress will supply respondent with sufficient funds and staff to perform his delegated administrative functions in connection with the special procedure laid down in the Act for determining the validity of price regulations alleged to have been violated in the past. Though under this special procedure complainants are technically the moving parties, they are really seeking to challenge the validity of MPR 368 only by way of defense to the pending enforcement action. If the government insists upon pressing that enforcement action, we see nothing "inequitable" in permitting complainants, even at this late day, to press their defense of invalidity, pursuant to the only procedure open to them under the Act. They are within the time limit prescribed by Congress for invoking this special procedure, and we ought not to read into the Act, by farfetched implication, a further limit, not expressed by Congress, upon the right to establish the defense of invalidity. See Utah Junk Co. v. Porter, supra, 328 U.S. 39, at page 44, 66 S.Ct. 889, 90 L.Ed. 1071. The equitable doctrine of laches, with its

* The destruction of price records and price information has been authorized under National Archives Job No. 347-276, approved by the Report of the Joint Committee on Disposition of Executive Papers, House Report 1026, 80th Congress, 1st Session, dated July 22, 1947. [Footnote copied from opinion.]

underlying reason of policy, cannot be invoked as an appropriate analogy in the situation here presented.[2]

In support of his argument as to laches, respondent refers to certain language of this court in R. E. Schanzer, Inc. v. Bowles, Em.App., 1944, 141 F.2d 262, to certain language of the Supreme Court in Utah Junk Co. v. Porter, 1946, 328 U.S. 39, 66 S.Ct. 889, 90 L.Ed. 1071, and to certain language contained in the Supplemental Appropriation Act, 1948. We think that none of these references lends any substantial support to respondent's position.

In the Schanzer case, supra, we were concerned with the interpretation of § 203(a) of the Price Control Act, as originally enacted. After providing that a protest might be filed within a period of sixty days after the issuance of any regulation or order under § 2, the subsection contained the following: "At any time after the expiration of such sixty days any persons subject to any provision of such regulation, order, or price schedule may file such a protest based solely on grounds arising after the expiration of such sixty days." We held, in accordance with the literal meaning of the subsection, that if the grounds of protest arose more than sixty days after the issuance of the regulation, a protest might be filed at any time after such grounds arose. We rejected a contention by the Price Administrator that such an interpretation would produce an absurd result which could not have been in the contemplation of the Congress, and that the subsection should be read as intended to provide that, where a protest is based upon grounds arising after the date of the issuance of the regulation, it must be filed within a period of sixty days after the protestant has had or could reasonably

have had notice of the existence of such grounds. The Price Administrator did not suggest the possibility of laches in that case, but contended that, unless the sixty-day period contained in the first sentence of the subsection was carried over by implication into the sentence dealing with protests based upon grounds arising subsequently to the issuance of the regulation, it would necessarily follow that protests could be filed in the latter situation without any limit of time. In partial answer to this, complainant in its brief made the following statement: "In the unlikely event that some unscrupulous operator might seek to take advantage of the Office of Price Administration by delaying his protest beyond reason in order to achieve some highly questionable end, this Court in the exercise of its inherent powers of equity could prevent such abuse on the ground of laches. *There are no such laches in this case.*" So far as we are aware, this is the origin of the suggestion, now pressed by respondent in the case at bar, that laches might have to be considered on the issue of the timeliness of protests. The point was thus only incidentally mentioned in the argument of the Schanzer case. Out of caution, and in order to indicate that the point was left open for future consideration, we remarked in our opinion (141 F.2d at page 265) that, if there is undue delay in the filing of a protest based upon grounds arising after the issuance of the regulation, "the defense of laches *may* be available to the Administrator." [Italics added.] That is all we said on the point; our statement is not even a dictum that laches would be so available.

In Utah Junk Co. v. Bowles, Em.App., 1945, 150 F.2d 963, we held that, notwithstanding the amended language of § 203(a)

---

[2] Congress did enact a provision akin to laches in § 204(e), where it provided that the enforcement court should not grant an application for leave to file a complaint directly in the Emergency Court of Appeals under § 204(e) in the absence of a finding that there was reasonable and substantial excuse for the defendant's failure to present such objection in a protest filed in accordance with § 203(a). Thus the protest procedure was evidently regarded as the normal recourse for attacking the validity of a regulation. It is significant that Congress did not impose a comparable requirement of due diligence in § 203(a); the sixty-day limitation which was originally in § 203(a) having been superseded in 1944 by the provision that a protest might be filed "at any time". By the Supplemental Appropriation Act, 1948, approved July 30, 1947, a specific time limit was restored in § 203(a); protests had thereafter to be filed within sixty days from the date of that enactment. But complainants filed their protests within such limited time.

to the effect that a protest might be filed at any time, it must be implied that a protest is untimely if it is filed after the objection sought to be raised has already been removed by amendment of the regulation. For that reason we dismissed a complaint under § 204(a) without consideration of the merits. Upon certiorari, Utah Junk Co. v. Porter, 1946, 328 U.S. 39, 66 S.Ct. 889, 90 L.Ed. 1071, the Supreme Court concluded that there was no warrant for reading any such qualification into the broad language of § 203(a), as amended; and therefore that an adjudication of past validity of a superseded regulation might be obtained via the protest route as well as by a complaint filed directly in the Emergency Court of Appeals under § 204(e). As an alternative ground for sustaining our judgment dismissing the complaint, the Price Administrator suggested to the Supreme Court that in any event the Utah Junk Company had been guilty of laches in the filing of its protest. The Supreme Court took note of this suggestion in the final paragraph of its opinion (at page 45 of 328 U.S., at page 892 of 66 S.Ct.): "Finally, apart from a construction of the statute which we are bound to reject, the Administrator seeks to invoke 'the general doctrine of laches' against the petitioner, upon the particular facts of this case. The Emergency Court of Appeals may consider that issue when, upon remand, it disposes of this case in conformity with this opinion." Of course that is not even an intimation by the Supreme Court that the laches point was well taken; all the Court did was to say to the Price Administrator that he was free to make the point, for whatever it was worth, when the case got back to the Emergency Court of Appeals upon remand. Laches was not heard of again in connection with the case. When the case was reheard by us upon remand, the Price Administrator made no mention of laches, and we decided the case on the merits without saying anything about it. Utah Junk Co. v. Fleming, Em.App., 1946, 159 F.2d 440, certiorari denied 1947, 330 U.S. 844, 67 S.Ct. 1084, 91 L.Ed. 1289.

The Supplemental Appropriation Act, 1948, after amending §§ 203(a) and 204(e) of the Price Control Act by introducing the definite time limits as above set forth, contains the following provision:

"Nothing herein shall be construed as in any way affecting the right of the United States or any officer thereof to dismiss any protest under section 203 of the Emergency Price Control Act of 1942, as amended, or defend against any complaint under section 204(e) of such Act on the ground of laches."

Reference to the Committee hearings will make clear the origin and purpose of this provision. Hearings before the Subcommittee of the Committee on Appropriations, House of Representatives, 80th Cong., 1st Sess., on the Supplemental Appropriation Bill for 1948, June 10, 1947, p. 442–443. Representatives of the Department of Commerce discussed with the Committee the volume of protest business which the Division of Liquidation might be expected to have to handle. It was pointed out that § 203(a) as it then read imposed no time limit upon the filing of protests, but allowed protests to be filed "at any time". The Solicitor for the Department stated that they would attempt to argue the point of laches as a ground for throwing out some of these protests, but expressed considerable doubt whether the argument would be accepted by the court. After setting a definite time limit upon the filing of future protests, Congress inserted in the appropriation act the sentence above quoted merely to make clear that it did not intend to foreclose the argument of laches which the Division of Liquidation had indicated its intention to urge upon the court. The issue as to the availability of laches as a ground for dismissing protests remained as it was before the enactment of the Supplemental Appropriation Act, neither strengthened nor weakened by the sentence referred to, which obviously does not amount to an affirmative enactment that a protest may be deemed to be untimely on the independent ground of laches, irrespective of the specific time limits prescribed by law.[3]

---

[3] The Supreme Court in Woods v. Hills, 68 S.Ct. 992, took note of the statutory reference to laches contained in the Supplemental Appropriation Act, 1948, but we take it that the Court did not mean to intimate any opinion as to the legal effect of that statutory language, for the point was not presented for decision in Woods v. Hills.

We conclude, therefore, that respondent's motion to dismiss the complaint should be denied. Since the protests were denied without consideration of the merits by respondent, this court cannot now decide the issue of validity, but the case must go back to the respondent for consideration and disposition of the protests on the merits. Respondent's alternative motion for striking out those portions of the complaint dealing with the merits must be granted. In this respect we follow the procedure outlined in R. E. Schanzer, Inc. v. Bowles, Em.App., 1944, 141 F.2d 262, 266.

Respondent's motion to dismiss the complaint is denied, and his motion to strike out portions of the complaint is granted. Upon consideration of the remaining portions of the complaint, a judgment will be entered setting aside respondent's order of October 24, 1947, dismissing the protests, and remanding the cause to the respondent with directions to consider and dispose of complainants' protests on their merits.