DALWELD COMPANY, Inc. and American Brazing Alloys Corp., Plaintiffs,

v.

WESTINGHOUSE ELECTRIC CORPORATION, Engelhard Hanovia, Inc., Engelhard Industries, Inc., Handy & Harman and United Wire & Supply Corporation, Defendants.

No. 65 Civ. 654.

United States District Court
S. D. New York.

March 31, 1966.

Bobroff, Olonoff & Scharf, New York City, for plaintiffs, Dalweld Co., Inc., and American Brazing Alloys Corp.; Herbert L. Scharf, New York City, of counsel.

Victor M. Earle, III, New York City, for defendant, Westinghouse Electric Corp.; Cravath, Swaine & Moore, Albert R. Connelly, John S. Gilbert, New York City, of counsel.

FRANKEL, District Judge.

In this action for treble damages and injunctive relief under the Clayton and Sherman Acts, one defendant, Westinghouse Electric Corporation, moves to strike from the complaint allegations relating to a criminal antitrust judgment upon a plea of *nolo contendere* entered

against this defendant on April 3, 1964. The allegations in question, reversing the order of their presentation in the complaint, are:

(1) That plaintiffs propose to rely upon the criminal judgment in this action "[p]ursuant to the provisions of [section 5(a) of the Clayton Act,] 15 U.S. C. Section 16" (complaint, par. 16); and (2) that defendants other than the movant have conspired to withhold supplies from plaintiffs "in retaliation for plaintiff's [sic] cooperation with the Department of Justice" in the prosecution leading to the *nolo* plea and judgment of April 3, 1964 (id., par. 15 (f)).

For reasons outlined below, the motion is granted as to paragraph 16 of the complaint (item (1), supra) and denied as to paragraph 15(f) (item (2), supra).

## I.

At least in the aspect we find it appropriate to treat first, decision of the motion turns on the application to relatively uncommon circumstances of the Clayton Act's section 5(a), 15 U.S.C. § 16(a), which says:

"A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title."

The criminal judgment pleaded in the disputed portions of plaintiff's complaint was based upon an indictment filed December 5, 1961, against Westinghouse, the other corporate defendants herein, and eight individuals. One of the corporate defendants was convicted after pleading not guilty; three pleaded guilty; as to one, the indictment was dismissed. Westinghouse, after initially pleading not guilty, but before trial, moved to substitute a plea of *nolo contendere.* The motion was denied by Judge Cashin, and the indictment proceeded to trial against Westinghouse on November 26, 1963. On December 5, the case went to the jury, which proved unable to reach a verdict. Discharging the jury, Judge Cashin ordered a new trial.

On March 16, 1964, before commencement of the new trial, Judge Cashin accepted Westinghouse's plea of *nolo contendere.* On April 3, judgment was entered imposing a fine of $15,000. In an opinion explaining his acceptance of the *nolo* plea, United States v. Engelhard-Hanovia, Inc., 252 F.Supp. 605 (S. D.N.Y.1964), Judge Cashin observed that Westinghouse was a comparatively minor figure in the conspiracy there charged. He also treated as a primary consideration the anticipated problem, which has now arisen, of private antitrust litigation. Making clear his premise that allowing Westinghouse to plead *nolo contendere* would preclude use of the judgment by private plaintiffs, he concluded that the circumstances justified this measure of leniency. He wrote (id. at 607):

"By pleading *nolo contendere,* Westinghouse takes as settled the question of its responsibility for the acts done as charged in the indictment. A plea of *nolo contendere* is essentially tantamount to a plea of guilty for the purposes of this case. In a case of this kind the only significant difference between the two pleas is that a plea of guilty or a verdict of guilty would constitute *prima facie* evidence against the defendant in a private treble damage action under the antitrust laws, whereas a plea of *nolo contendere* has been held to be excepted from the *prima facie* effect of the statute. * * *

"After having considered the relevant and pertinent facts which were submitted during the trial of this case, I am satisfied that, in the exercise of my discretion, the application should be granted. Even from the allegations of the indictment, the participation of Westinghouse in this conspiracy was of much shorter duration and significantly less than that of the other defendants. * * * Moreover, as regards the defendant Westinghouse, the refusal of a *nolo contendere* plea does not appear to be required in order to protect treble damage claimants or to serve the public interest."

There has been no suggestion that Judge Cashin's views in the criminal proceeding are, in any strict sense of the lawyer's word, "binding" upon the plaintiffs here. To be sure, it is difficult to ignore the fact that the careful study and long *hesitation* preceding allowance of the *nolo* plea were exercises in futility if the criminal judgment is now available to plaintiffs. It is, similarly, an appealing circumstance that avoidance of this consequence was a (if not *the*) primary consideration on which Westinghouse entered such a plea rather than putting the Government to its proof a second time. But these are not "equities" against the present plaintiffs, which were not parties to the criminal proceeding. Rather, the premises underlying the plea and judgment have weight in the sense of being obviously pertinent precedent. For that reason and, more importantly, because it appears to resolve correctly the close question presented, we follow Judge Cashin's lead.

■ It seems settled by now that a judgment entered on a plea of *nolo contendere* "before any testimony" is within the proviso to section 5(a) and is therefore unavailable to a plaintiff in a subsequent civil action. E. g., City of Burbank v. General Electric Company, 329 F.2d 825 (9th Cir. 1964) ; Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 323 F.2d 412 (7th Cir. 1963), cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L.Ed.2d 659 (1964) ; Atlantic City Electric Co. v. General Electric Co., 207 F.Supp. 620, 628–629 (S.D.N.Y.1962), affirmed on other grounds, 312 F.2d 236 (2d Cir. 1962), cert. denied, 373 U.S. 909, 83 S.Ct. 1298, 10 L.Ed.2d 411 (1963).

Plaintiffs point out, however, that testimony had certainly been taken under the indictment against Westinghouse. The fact that the jury disagreed, requiring the ordering of a new trial, could not obliterate what had happened. It remained impossible, plaintiffs say, for the defendant to have a consent judgment "entered before any testimony [had] been taken. * * *"

■ The argument has substance, not only on textual grounds but in terms of at least one of the policies underlying section 5(a)—namely, the "broad aim * * * to use 'private self-interest as a means of enforcement' of the antitrust laws." Minnesota Mining & Mfg. Co. v. New Jersey Wood Finishing Co., 381 U.S. 311, 318, 85 S.Ct. 1473, 1477, 14 L.Ed.2d 405 (1965), quoting Bruce's Juices, Inc. v. American Can Co., 330 U.S. 743, 751, 67 S.Ct. 1015, 91 L.Ed. 1219 (1947). The breadth of that objective argues against straining for ways to deprive private plaintiffs of benefits intended for them from litigated judgments obtained by the Government. Nevertheless, at least in the particular circumstances presented here, we think a fair construction of the proviso requires its application to the judgment entered on defendant's plea of *nolo contendere*.

In reaching this conclusion, we are guided by another consideration of policy, the one on which the proviso itself is grounded. That policy, apparent in any event, is made explicit in legislative history that has been reviewed elsewhere (see, e. g., Twin Ports Oil Co., v. Pure Oil Co., 26 F.Supp. 366, 374–376 (D.Minn. 1939)) ; it is to foster prompt capitulation by defendants who might otherwise prefer to postpone the evil day at substantial cost to the fisc and to the public interest in speedy enforcement. Approaching the problem in terms of that purpose, we would forget that "literalness may strangle meaning" (Utah Junk

Co. v. Porter, 328 U.S. 39, 44, 66 S.Ct. 889, 90 L.Ed. 1071, (1946)) if we held the proviso inapplicable here. Cf. National Labor Relations Board v. Fruit and Vegetable Packers, 377 U.S. 58, 72, 84 S.Ct. 1063, 12 L.Ed.2d 129 (1964); United States v. American Trucking Ass'ns, 310 U.S. 534, 543–544, 60 S.Ct. 1059, 84 L.Ed. 1345 (1940).

We may accept for this case the thesis in plaintiffs' Memorandum (p. 10) that to implement the proviso's objective of early capitulation, the language should be read to confront defendants with a "statutory choice-point * * * prior to the taking of 'any testimony.'" As we have mentioned, Westinghouse tendered its *nolo* plea before the first trial, quite literally "before any testimony. * *" And this is at least a circumstance in its favor on the present motion.

But the problem here arises because the "choice" was not for Westinghouse alone to make. See City of Burbank v. General Electric Company, supra, 329 F. 2d at 831–832. Following the initial rejection of its plea, it stood trial. After a mistrial, still presumed to be innocent, it again offered to surrender "before any testimony." Again, the offer entailed the benefits to the public at which Congress aimed in the proviso to section 5(a). Again, court and counsel viewed the problem as having no great significance beyond the issue now posed. And at that point the plea was allowed and judgment entered "before any testimony" was taken in the new trial.

The resulting problem is not happily resolved merely by conjuring with the words "before any testimony." It is relevant, though not in itself decisive, that for a variety of purposes, when a new trial is ordered, "the case is tried as if it had not been tried before." Barnsdall Refining Corporation v. Birnamwood Oil Co., 32 F.Supp. 308, 311 (E.D.Wis.1940). What tips the balance ultimately is that treating the new trial in this way achieves a result that seems to harmonize with the purpose of the section 5(a) proviso. Westinghouse not only capitulated at the outset of the new trial; it had attempted to do so before the first trial. It did not play the waiting game against which Congress guarded when it limited the proviso to consent judgments entered "before any testimony." It gave in full substance the consideration demanded by the proviso.

This conclusion squares with the holding of the one prior case research has disclosed involving substantially the same problem, Barnsdall Refining Corporation v. Birnamwood Oil Co., 32 F.Supp. 308 (E.D.Wis.1940), noted in 65 Harv.L.Rev. 1400, 1401 (1952). There, a first criminal trial (apparently not preceded by an offer of a *nolo* plea) had ended in a verdict of guilty. Only after that verdict had been set aside and a new trial ordered did defendant tender the plea of *nolo contendere* upon which judgment was entered. Nevertheless, the court concluded, on reasoning we largely follow, that the proviso of section 5(a) applied in the later civil action.[1] The case for Westinghouse is a stronger one.

---

1. In one respect, which may well be academic, we do not adopt the reasoning of the *Barnsdall* opinion. That opinion said—and Westinghouse argues alternatively here—that judgments on pleas of *nolo contendere* are altogether outside § 5(a), even apart from the proviso, because such judgments effect no "estoppel as between the parties thereto * * *." See 32 F.Supp. at 312–313. There is, indeed, considerable authority declaring that the demure plea of *nolo contendere* is distinguished from a guilty plea mainly, if not solely, in that the former works no estoppel. E. g., Hudson v. United States, 272 U.S. 451, 455, 47 S.Ct. 127, 71 L.Ed. 347 (1926); Mickler

v. Fahs, 243 F.2d 515, 517 (5th Cir. 1957). On the other hand, there is no *a priori* reason why this should universally be so. Cf. Louisiana State Bar Association v. Connolly, 206 La. 883, 20 So.2d 168 (1944), 89 A.L.R.2d 604 (1963).

It is now fairly clear, however anomalous it may once have sounded, that the § 5(a) proviso was meant to provide for "consent" judgments in criminal as well as civil cases. E. g., Commonwealth Edison Co. v. Allis-Chalmers Mfg. Co., 323 F.2d 412, 414 (7th Cir. 1963), cert. denied, 376 U.S. 939, 84 S.Ct. 794, 11 L. Ed.2d 659 (1964); City of Burbank v. General Electric Company, 329 F.2d 825, 832–834 (9th Cir. 1964); Note, 53 Calif.

The *Barnsdall* decision—while its subject, like ours, is not a frequently recurring one—has stood for a generation. It has been cited with some frequency. It was, significantly, cited by Judge Cashin in his opinion accepting the plea here involved. See 1964 Trade Cases at 79, 162 n. 4. It has been a familiar item in the learning of the antitrust bar. There is persuasive reason to follow it, and we do so.

## II.

 The remaining branch of the motion—to strike allegations that defendants other than the movant effected retaliatory restraints against plaintiffs for cooperating in the criminal prosecution—presents different considerations. In the first place, since the allegations specifically except Westinghouse, we doubt its standing to attack them. Secondly, the defendants who are affected did not plead *nolo contendere* in the criminal proceeding; their situation differs, therefore, even if this aspect of the complaint is viewed as relating to section 5(a).

Finally, however, this does not seem to be a 5(a) problem at all. The charge of retaliation is not in terms an effort to use the criminal judgment as prima facie evidence in the sense of that statute. The fact that a judgment is not usable under section 5(a) does not mean it is necessarily a forbidden topic for all purposes. Cf. Pfotzer v. Aqua Systems, 162 F.2d 779, 784–785 (2d Cir. 1947). Whatever rulings on this subject may come to seem appropriate at the trial, Westinghouse

errs in contending that it falls within the "single question" posed by the present motion to strike.

Counsel will settle an order granting the motion with respect to paragraph 16 and denying it as to paragraph 15(f) of the complaint.

L.Rev. 627, 641 (1965). It is also a matter of increasingly weighty consensus, as illustrated in the preceding citations, that the criminal judgments thus excepted do not include those entered on guilty pleas. Accordingly, unless the proviso is for *nolo* pleas, it would appear to have no office at all for criminal judgments.

While a logician would quail before such reasoning backwards from a proviso, this seems a strong argument, considering the non-Aristotelian life of the statute to date, against holding that judgments on *nolo* pleas are not covered regardless of the proviso. The problem, after all, is not to rationalize the common-law subtleties of *nolo contendere* pleas, but to

organize a faithful meaning for the legislative mandate in § 5(a). Cf. Comment, 39 N.Y.U.L.Rev. 518, 521–23 (1964). Viewing the matter this way, we are not prepared to say that a judgment on a *nolo* plea, if found to be outside the proviso, would none the less be unavailable under § 5(a). It is sufficient in any event for this case to hold that the judgment in question may not be used as *prima facie* evidence under the statute only because it is "within the proviso, being a consent judgment entered before any testimony had been taken." Pfotzer v. Aqua Systems, 162 F.2d 779, 784 (2d Cir. 1947).