**Joe POTMESIL, et al.**

**v.**

**ALEXANDRIA PRODUCTION CREDIT ASSOCIATION.**

**Civ. A. No. 84–0445.**

United States District Court,
W.D. Louisiana,
Alexandria Division.

Sept. 18, 1984.

Jack O. Brittan, Natchitoches, La., Harry A. Hammill, Alexandria, La., John Luster, Trustee, Natchitoches, La., for plaintiffs.

Trimble, Randow, Percy, Smith, Wilson & Foote (H. Gregory Walker, Jr.), Alexan-

---

**18.** The rest of Potts' counterclaims are without   merit and shall be denied.

**732**

dria, La., for Alex. Production Credit Assoc.

George T. Allen, Jr., Shreveport, La., for International Harvester Credit Corp.

NAUMAN S. SCOTT, District Judge.

## RULING

This is an appeal from a Judgment rendered by the Bankruptcy Court for the Western District of Louisiana, granting relief under Chapter 7 of the Bankruptcy Code against Joe and Ina Potmesil. The issue is clear: Is Mr. Potmesil a "farmer" under 11 U.S.C. § 101(17) and 11 U.S.C. § 303(a)?

## FACTS

For the calendar year 1982, appellants Mr. and Mrs. Joseph Potmesil derived approximately 84.9% of their taxable income from the sale of livestock, cotton, soybeans and other agricultural products taken from their farm. However, on December 22, 1982 they sold to their daughter, Princess Diane Potmesil Mudge approximately 1,276 acres of farmland together with farm machinery and a mobile home, the appellant's residence. Thereafter, on February 9, 1983, Alexandria Production Credit Association (APCA) filed legal proceedings in the Ninth Judicial District Court for the Parish of Rapides seeking to have the sale of such farm land set aside as a sham. An Exception of Improper Venue was maintained and the State Court action was transferred to the Tenth Judicial District Court in and for the Parish of Natchitoches, State of Louisiana. On September 16, 1983, APCA instituted proceedings in the Bankruptcy Court. This appeal followed.

## WHO IS A "FARMER"

Appellants argue that the statutory definition of who is a "farmer" under the new Bankruptcy Code is specific and unambiguous, that they fall within such definition and that as such they cannot be thrown into the involuntary bankruptcy ordered by the Bankruptcy Court. Section 303 of the Code (11 U.S.C.) states that "(a)n involuntary case may be commenced only under Chapter 7 or 11 of this title, and only against a person, *except a farmer* ... that may be a debtor under the chapter under which such case is commenced." (emphasis added). Therefore if appellants are correct in their assertions, we must vacate the Bankruptcy Court's ruling.

In an involuntary case, whether a debtor is a farmer is a factual question to be pled and proven under 11 U.S.C. § 101(17) that more than 80% of his prior year's gross income was so derived. *In Re Johnson,* 13 B.R. 342, 346 (Bkrptcy.D. Minn.1981). If he fails to plead and prove that he is a farmer, he has in effect consented to the entry of the order for relief by the creditor(s). *Id.* 13 B.R. at 347.

Here, it is undisputed that the appellants derived 84.9% of their preceding year's gross taxable income from their farming operations and also properly asserted their status as farmers as an affirmative defense in their original answer. Thus we find that appellants are entitled to relief from the order of the Bankruptcy Court.

## KEEPING IT DOWN ON THE FARM

Nonetheless, appellees argue that since Mr. and Mrs. Potmesil had sold their farm at the end of 1982, they were not farmers at the time the petition was filed and, therefore, the definition of a farmer as contained in the Code would have no bearing. Appellees' argument is misplaced.

11 U.S.C. § 101(17) expressly states:

"'farmer' means person that received more than 80 percent of such person's gross income during the taxable year of such person *immediately preceding the taxable year of such person during which the case under this title concerning such person was commenced* from a farming operation owned or operated by such person;" (emphasis added).

And 11 U.S.C. § 101(18) is as equally clear:

"'farming operation' includes farming, tillage of the soil, doing farming, ranch-

ing, production or raising of crops, poultry, or livestock and production of poultry or livestock products in an unmanufactured state."

We merely point out that § 101(17) plainly speaks in terms of the "preceding" taxable year without any mention of a person's status at the time the petition is filed. We do not see why we should look at appellants' status at anytime other than when the statute calls for. The purpose of statutory construction is to discover the true meaning of the law. *Utah Junk Co. v. Porter*, 328 U.S. 39, 66 S.Ct. 889, 90 L.Ed. 1071 (1946). It should only be used in case of doubt and not to create doubt. *Helvering v. Northwestern Nat'l Bank & Trust Co.*, 89 F.2d 553 (8th Cir.1937). Where the statute is clear on its face there is no need to use rules of construction. *U.S. v. Bryant*, 671 F.2d 450 (11th Cir.1982); *Matter of Garfinkle*, 577 F.2d 901, 904, fn. 4 (5th Cir.1978).

Certainly, Congress knew that farming is a speculative business which could succeed or fail merely by changes in the winds and rains. *See, In Re Hines*, 7 B.R. 415, 418 (Bnkrptcy.D.S.D.1980). If our legislators intended to investigate a person's status as to whether or not he was *still* a farmer at the time of the filing of the petition, they had the wherewithal to do so. We therefore now decline to wade into the murky waters of judicial activism in order to change their present clear intent.

It is hereby ORDERED that the Judgment of the Bankruptcy Court be VACATED.