**In re Cecil Gregory TART, SS# : 238–46–0605, Jackie Johnson Tart, SS#: 246–52–7906, Debtors.**

**Bankruptcy No. 86–02734–SO5.**

United States Bankruptcy Court,
E.D. North Carolina.

April 23, 1987.

John W. Morris, Smithfield, N.C., for debtors.

R.A. Renfer, Jr., Asst. U.S. Atty., Raleigh, N.C., for Farmers Home Admin.

Richard M. Stearns, Kinston, N.C., for Trustee.

## MEMORANDUM OPINION AND ORDER

A. THOMAS SMALL, Bankruptcy Judge.

The matter before the court is the objection to the confirmation of the debtors' chapter 12 plan filed on March 18, 1987, by Farmers Home Administration, a creditor of the debtors. A hearing on the confirmation of the debtors' plan was held in Raleigh, North Carolina, on March 25, 1987. That hearing was continued pending this court's determination of whether the debtors were "family farmers" within the meaning of 11 U.S.C. § 101(17)(A) so as to be eligible for relief under chapter 12 of the Bankruptcy Code. Briefs on that issue have been filed by the debtor and by Farmers Home Administration.

## JURISDICTION

This bankruptcy court has jurisdiction over the parties and subject matter of this proceeding pursuant to 28 U.S.C. §§ 1334, 151, and 157, and the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984. This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(A) and (L), which this court may hear and determine.

## FACTS

For purposes of ruling on Farmers Home Administration's objection, the court will assume the following facts, as represented by the debtors' attorney, to be true:

The debtors filed their petition for relief under chapter 12 of the Bankruptcy Code on November 26, 1986. Both debtors have been disabled since prior to the filing of their bankruptcy petition and have been receiving disability benefits from Social Security and pursuant to a private insurance plan. The debtors were not actively planting or harvesting crops at the time they filed their petition, and their chapter 12 plan states that they "do not plan to continue in farming operations." The debtors had sold all of their real property prior to the filing of their bankruptcy petition except for their house and the lot upon which the house sits. For the tax year 1985, the debtors' income consisted of $23,000 from the sale of farm land, $1,390 in rent payments for land and tobacco allotments, $8,600 in benefits from a private disability insurance company, and $9,600 in disability payments from Social Security. Prior to his disability, Mr. Tart had been a farmer all of his adult life, and all of the Tarts' debts had arisen from farming.

Farmers Home Administration takes the position that the debtors' chapter 12 plan should not be confirmed because, among other things, the debtors are not eligible for relief under chapter 12 because they are not family farmers within the meaning of 11 U.S.C. § 101(17). The chapter 12 trustee, Richard M. Stearns, contends that the debtors do not qualify for chapter 12 relief for the same reason advanced by Farmers Home Administration.

## DISCUSSION AND CONCLUSIONS

On October 27, 1986, President Reagan signed the Bankruptcy Judges, United States Trustees, and Family Farmers Bankruptcy Act of 1986 (P.L. 99–554) which created a new chapter of the Bankruptcy Code, chapter 12, which was intended to aid

family farmers. The availability of chapter 12 relief is specifically limited to "family farmer[s] with regular annual income." 11 U.S.C. § 109(f). The Bankruptcy Code defines a "family farmer with regular annual income" as a family farmer with a sufficiently stable and regular annual income to enable payments under a chapter 12 plan to be made. 11 U.S.C. § 101(18). The following definition of an individual family farmer appears in § 101(17)(A) of the Bankruptcy Code:

"[F]amily farmer" means—

(A) individual or individual and spouse engaged in a farming operation whose aggregate debts do not exceed $1,500,000 and not less than 80 percent of whose aggregate noncontingent, liquidated debts (excluding a debt for the principal residence of such individual or such individual and spouse unless such debt arises out of a farming operation), on the date the case is filed, arise out of a farming operation owned or operated by such individual or such individual and spouse, and such individual or such individual and spouse receive from such farming operation more than 50 percent of such individual's or such individual and spouse's gross income for the taxable year preceding the taxable year in which the case concerning such individual or such individual and spouse was filed.

Under § 101(17)(A) and § 109(f), a threshold requirement for qualifying for relief under chapter 12 is that the debtors be individuals "engaged in a farming operation." Although "farming operation" is defined in the Bankruptcy Code,[1] the Code does not specify the time period during which a debtor must be engaged in a farming operation to be eligible for chapter 12. In the present case, the debtors had sold all their real property except for their house prior to the filing of their chapter 12 petition. The debtors have not claimed that they were engaged in farming at the time they filed their petition, and their chapter 12 plan states that they "do not plan to continue in farming operations." The debt-

ors contend that they should be eligible for chapter 12 relief if they satisfy the other definitional requirements of § 101(17)(A) even though they were not engaged in farming operations at the time their petition was filed.

A similar issue was faced in *Potmesil v. Alexandria Production Credit Association*, 42 B.R. 731 (W.D.La.1984), which addressed the question of whether a debtor was a "farmer" so as to be immune to an involuntary bankruptcy petition pursuant to 11 U.S.C. § 303. "Farmer" is defined in 11 U.S.C. § 101(19) (formerly 11 U.S.C. § 101(17)) as a person who received more than 80% of his income for the taxable year preceding the taxable year in which the petition was filed from a farming operation owned or operated by that person. (The Bankruptcy Code specifically states that this definition of "farmer" appearing in § 101(19) is inapplicable to the definition of "family farmer" appearing in § 101(17).) In *Potmesil*, it was undisputed that the debtors satisfied the 80% test; the debtors' creditors argued, however, that the debtors were not "farmers" within the meaning of the statute because they had sold their farm before the involuntary petition was filed. The district court rejected this argument:

We merely point out that § 101(17) [now § 101(19)] plainly speaks in terms of the "preceding" taxable year without any mention of a person's status at the time the petition is filed. We do not see why we should look at appellants' status at anytime other than when the statute calls for....

Certainly, Congress knew that farming is a speculative business which could succeed or fail merely by changes in the winds and rains. See, *In re Hines*, 7 B.R. 415, 418 (Bnkrptcy.D.S.D.1980). If our legislators intended to investigate a person's status as to whether or not he was *still* a farmer at the time of the filing of the petition, they had the wherewithal to do so. We therefore now de-

---

1. 11 U.S.C. § 101(20) states that " 'farming operation' includes farming, tillage of the soil, dairy farming, ranching, production or raising of crops, poultry, or livestock, and production of poultry or livestock products in an unmanufactured state."

cline to wade into the murky waters of judicial activism in order to change their present clear intent.

*Id.* at 733.

The present case is distinguishable from *Potmesil* because of the differences between sections 101(17) and 101(19). Section 101(17) states that a "family farmer" means an individual "engaged in a farming operation;" no such language is found in the section 101(19) definition of "farmer." The inclusion of this language in § 101(17) suggests that Congress intended to require more than that a "family farmer" be engaged in a farming operation during the taxable year preceding the year in which the petition was filed. If Congress intended to focus only on this time period, the "engaged in a farming operation" language would be superfluous since it would appear that an individual who, for the taxable year preceding the year in which the petition is filed, incurred at least 80% of his debt and received at least 50% of his income from a farming operation he owned or operated, as required by § 101(17), would necessarily have been engaged in a farming operation during that same time period. A statute should not be interpreted so as to render one part inoperative, superfluous, or insignificant. *In re Gyulafia,* 65 B.R. 913 (Bankr.D.Kan.1986); *In re Brooks,* 51 B.R. 741 (Bankr.S.D.Fla.1985).

Because Congress has not defined "engaged in a farming operation" in a way which specifies the relevant time period, the statute should be interpreted reasonably in a manner which gives effect to the overall purpose of the legislation.[2] *See In re Adeeb,* 787 F.2d 1339, 1344 (9th Cir. 1986); *In re Ganzer,* 54 B.R. 75 (Bankr.D. Minn.1985); *In re Mims,* 49 B.R. 283, 286 (Bankr.E.D.N.C.1985). The legislative history of chapter 12 indicates that its primary purpose is to help family farmers

*continue* farming. A conference committee report was prepared which worked out the differences between the versions of chapter 12 which had been passed by the Senate and the House. Such a report is, apart from the language of the statute itself, the most reliable indicator of Congressional intent. *Monterey Coal Co. v. Federal Mine Safety and Health Review Commission,* 743 F.2d 589, 598 (7th Cir. 1984). The report was filed on October 2, 1986, and contained, in addition to the final version of the bill which was passed by the House and Senate on October 2, 1986, and October 3, 1986, respectively, a "Joint Explanatory Statement of the Committee of Conference" which was signed by the committee members. That statement declared that chapter 12 "is designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land."

Statements by the primary sponsors of chapter 12 also suggest that its primary purpose is to help family farmers stay in farming. On the day that the final version of chapter 12 was passed by the House, Representative Mike Synar stated that chapter 12 would give new hope to "family farmers who are facing that brink of disaster where they would have to be thrown off their farms" by giving them "the same standard that a small businessman or an individual has at this present time, which is the ability to reorganize." 132 Cong.Rec. H9001 (daily ed. October 2, 1986). Just before the Senate voted on the final version of chapter 12, Senator Charles Grassley spoke to that body of "the despair of being a middle-aged farmer suddenly told to find another livelihood to support a family." 132 Cong.Rec. S15075 (daily ed. October 3, 1986).

---

**2.** In order to give effect to the legislative intent, it may be necessary for a court to look beyond the literal language of the statute. *In re Ganzer,* 54 B.R. 75, 77 (Bankr.D.Minn.1985). For instance, it could be argued that, read literally, the definition of "family farmer" would preclude from chapter 12 eligibility a hog farmer who filed for relief after his stock had been wiped out in a natural disaster and who was awaiting

insurance compensation before obtaining new pigs. Similarly, it could be argued that chapter 12 relief is not available to a farmer who files in the dead of winter when he has no crops in the ground because he was not, at the time of filing, "engaged in a farming operation." The court believes that such a literal reading of the definition of "family farmer" would be inconsistent with the broad purposes of chapter 12.

Based on this legislative history and the definition of "family farmer" as an individual "engaged in a farming operation," this court holds that the debtors in this case who were, at most,[3] only minimally engaged in farming during the taxable year preceding the taxable year in which their petition was filed, who had sold all their farmland prior to the filing of their petition, and who do not intend to resume any farming operations, do not qualify for relief under chapter 12.[4] While the court sympathizes with these debtors, chapter 12 has come too late to be of assistance to them. In view of today's holding, it is unnecessary for this court to decide whether the debtors received 50% of their income for 1985 from a farming operation, as is also required under § 101(17)(A).

The debtors should be given an opportunity to move to convert their case to another chapter under the Bankruptcy Code. *See In re Orr*, 71 B.R. 639 (Bankr.E.D.N.C. 1987). The debtors shall have ten (10) days from the entry of this Memorandum Opinion and Order to file such a motion. If no motion to convert is filed, or if it is denied, the debtors' case shall be dismissed. Accordingly,

IT IS HEREBY ORDERED that the debtors, Cecil Gregory Tart and Jackie Johnson Tart, shall have ten (10) days from the entry of this order to file a motion to convert their case to a case under another chapter of the Bankruptcy Code; and

IT IS FURTHER ORDERED that if no motion to convert is filed, or if a motion to convert is filed and denied, then the debtors' case will be dismissed.

---

**3.** There is a question, which this court will not address today, as to whether an individual who rents farm land to others without sharing in the financial risks inherent in farming should be considered to be engaged in a farming operation. *See Armstrong v. Corn Belt Bank*, 55 B.R. 755, 760–761 (C.D.Ill.1985).

**4.** This court declines to set forth a general rule specifying the time period during which an individual must be engaged in a farming operation in order to qualify as a "family farmer." For the time being, at least, each case will be decided upon its own unique facts.