### In re James E. BLI and Pearl R. Bli, Debtors.

### In re Richard BLI, Debtor.

### Nos. 03–22949, 03–22950.

United States Bankruptcy Court, E.D. Michigan, Northern Division.

April 27, 2004.

Peter C. Jensen, Thomas & Jensen, PC, Saginaw, MI, for James Ernest Bli.

James and Pearl Bli, Bay City, MI, pro se.

Jill M. Gies, U.S. Trustee's Office, Detroit, MI, for Marion J. Mack, U.S. Trustee.

*OPINION IN CONNECTION WITH WHETHER DEBTORS ARE "FARMERS" UNDER 11 U.S.C. § 101(20)*

WALTER SHAPERO, Bankruptcy Judge.

The United States Trustee ("UST") has filed motions to dismiss or convert each of

these companion Chapter 11 cases ("Present Cases") to a Chapter 7 proceeding. It has become clear that if the motions were to be granted, the UST preferred conversion, rather than dismissal, in light of the prior histories of these Debtors and other relevant considerations. Given the somewhat different statutory grounds for dismissal and conversion and other factors, and, the prohibition in 11 U.S.C. § 1112(c) against such a conversion if the debtor is a "farmer", the Court undertook to hold a hearing and issue an opinion on the availability of the conversion option. While these cases are neither procedurally nor substantively consolidated, the minimal differences between them as to the relevant dispositive facts permit a single opinion covering both. For the following reasons, the Court concludes that each Debtor is a "farmer" and, therefore, conversion is not an option.

### History of Debtors' Prior Cases

These two Debtors (and related individuals and entities) were debtors in prior bankruptcy cases as follows:

| Case Name/Number | Case Type | Filing/Order Date(s) |
|---|---|---|
| Richard Jerry Bli Case No. 01–20988 | Chapter 11 | 3/30/2001 |
| James & Pearl Bli Case No. 01–21070 | Chapter 11 | 4/6/2001 |
| Charlotte Bli Case No. 01–21069 | Chapter 11 | 4/6/2001 |
| Substantively consolidated case of Richard Bli, James & Pearl Bli, and Charlotte Bli under Case No. 01–20988 | Order substantively consolidating above 3 Chapter 11 cases | 7/12/2001 |
| Bli Farms, a Partnership [1] Case No. 01–22628 | Chapter 11 | 8/31/2001 |
| Substantively consolidated case of Richard Bli, James & Pearl Bli, Charlotte Bli, and Bli Farms; under Case No. 01–22628 | Order substantively consolidating the consolidated case of the above individuals and the partnership case | 10/26/2001 |

Collectively these cases will be referred to as the "Prior Cases". James E. Bli and Richard Bli are brothers, and Charlotte Bli is their mother. Bli Farms is a general partnership, the equal partners of which are James E. Bli and Richard Bli. The cases experienced a somewhat tortured and litigious history ending on June 2, 2003, when all of the cases were dismissed by reason of the Debtors' failures to comply with a prior order requiring dismissal if they did not deposit an amount of money needed incident to confirmation of their proposed (but not confirmed) Chapter 11 plans. During the period of the Prior Cases, the farming operations were being physically conducted by the Debtors individually, as well as by the two sons of James Bli–William Bli and James Bli Jr.

---

1. Bli Farms Partnership had previously filed a Chapter 11 on May 11, 2001, which case was subsequently dismissed on June 4, 2001, due to the Debtor's failure to obtain counsel.

## The Present Cases

The Present Cases (there are no others) were commenced in *pro per* on July 31, 2003. As of now, pursuant to Court order, these Debtors have recently filed disclosure statements and plans, which the Court has indicated did not meet the basic requirements of such filings. The Court has given Debtors until April 30, 2004, within which to amend them at least to a point where the Court can even give consideration to either preliminarily approving them or, if not, holding a hearing as to their adequacy, or some other appropriate action. In the meantime, there are also before the Court: (1) a motion for relief from stay filed by the Debtors' principal secured farm equipment creditor; and (2) completion of the hearings incident to the UST's motion to dismiss/convert.

## Discussion

The word "farmer" in 11 U.S.C. § 101(20) is defined as a "person that received more than 80 percent of such person's gross income during the taxable year of such person immediately preceding the taxable year of such person during which the case under the title concerning such person was commenced from a farming operation owned or operated by such person;" ("farming operation" is also a defined term, but there is no question that Debtors are conducting such). The Present Cases were filed in 2003, and thus the taxable year involved is calendar 2002. During that year, these particular Debtors' prior bankruptcies (as part of the Prior Cases) were open and, therefore, most of, if not all, of the facts relative to the question at issue occurred then. That evidence and the Court's factual findings may be summarized as follows:

1. The entities and individuals involved in the Prior Cases as a group conducted a farming operation under the name of "Bli Farms." They did so pursuant to a Joint Venture Agreement which was oral for years, but was later reduced to a writing dated April 18, 2002. (Trial Exhibit 2). "Bli Farms," the specific partnership component of the Prior Cases, is to be distinguished from the joint venture; whether or not it is or should be considered as yet another component of the farming operation is immaterial to the result on the subject issue.

2. The parties to the Joint Venture Agreement are James Bli, James Bli, Jr., Richard Bli and William Bli. Each of the venturers, but primarily James Bli and Richard Bli, themselves individually owned, leased or otherwise controlled various farmable parcels of real estate as well as farming equipment, all of which they pooled for the purposes of the total Bli Farms farming operation. The Joint Venture Agreement states that any net income would be distributed to the partners by way of a formula which in effect stated it would be divided up in a manner for tax purposes which "reduced tax liabilities to the greatest extent possible." As of the hearing, the venture had not filed any tax return for the year 2002, nor had the Debtors individually. Pearl Bli is the primary bookkeeper for the farming operation. The actual banking of receipts from, and payment of expenses of, the farming operation were primarily handled by James Bli, Jr., largely through a bank account or accounts in his name.

3. During calendar 2002, the gross receipts from the farming operation were estimated at some $600,000, and, the associated expenses were roughly the same amount. The expense figure included about $5,000 to $6,000 paid out for personal living expenses of each of the Debtors, as well as the other two venturers, either by way of cash distri-

butions directly to each of the venturers, or by way of direct payments of such personal expenses out of the venture's pooled account. Other than such, Debtors had no material sources of income, other than possibly $1,000 or so each, obtained from bottle or container deposits. Debtor Richard Bli, while helping out in the farming operation when and where needed, also spends a substantial amount of his time caring for his mother with whom he lives. Most of the physical labor involved in the operation appears to be performed by a combination of James Bli, Sr., James Bli, Jr., and William Bli, possibly also with the help of some hired hands. The types of crops the operation grew required financing arrangements with vendors of seed, fertilizer, chemicals, gasoline, or other fuel, for temporary storage facilities, hauling, etc., and those arrangements were primarily handled by James Bli, Jr. To some extent, the financing may have involved his or others' personal guarantees or undertakings, as well as those of Debtors. Ultimately, the harvested crops were used as the chief collateral for any such financing. Negotiating for crop sales seemed to be handled in a variety of ways by different venturers.

4. The combined monthly statements of assets, liabilities, income, expense and cash flow, required to be filed by Debtors in the Prior Cases, and with respect to calendar 2002, showed: (1) monthly income of $1751(the same each month) with a yearly total of $21,012; and (2) essentially no expenses. Each of the Present Case Debtors share of those numbers would have been a fraction thereof. Clearly those numbers do not reflect any of the gross income and/or expenses involved in or emanating from, the farming operation.

5. The present Debtors are at least second, and may possibly be third, generations of the Bli and associated families involved in this farming operation.

6. Aside from the ever present vagaries and risks incident to farming such as weather, fluctuating markets and market prices (affected by overall supply and demand), as well as crop yields, Debtors' 2002 and possibly other years' farming operations (previously relating to the time these Debtors could devote to the farming operation) were adversely affected to an unquantifiable degree by a criminal proceeding brought by the government (those of the Debtors involved were acquitted in early 2003), as well as ongoing civil proceedings and actions commenced by, or going on between, Debtors and the government incident to claimed entitlement by Debtors to proceeds of crop insurance and other farm entitlements related to crop years prior to 2002.

7. In the Prior Cases, Debtors were in pro per for part of the time, but were represented by counsel in their latter stages.

It should be here further stated that there exist any number of discrepancies or inconsistencies on a number of factual matters between what Debtors have testified to in the Present Cases and the Prior Cases, comparing various filed disclosure statements and reports, testimony at Section 341 and other hearings, etc. While such might come into play in other matters before the Court, their incidence and nature, however, are not such as would cause or require the Court to discount everything Debtors testified to in connection with the matter before the Court and, in particular, the above recited facts. The facts upon which the Court bases its conclusion on the narrow matter before it appear to be largely uncontroverted and/or

whatever discrepancies there might be would not adversely affect the Court's conclusion.

The UST argues that whether or not Debtors are "farmers" within the meaning of the statutory definition should depend exclusively on what the filed monthly statements show. On that basis, and assuming, (as is likely) therefore, that each of the debtors in the Prior Cases (essentially three) had equal interests in what was reported on the monthly collective statements, each of the current two Debtors can be said to have had about $7,000 in gross income in calendar 2002, and none of it was from farming-given that the monthly reported figures clearly exclude any share of any gross income from or expenses of the farming operation. The UST's position is that even if it is the fact that a debtor, clearly otherwise physically engaged in farming which is the sole source of whatever livelihood that engagement permits to be eked out, earns that livelihood through the medium of a joint venture through which the farming operation is conducted and of which he or she is one of the venturers, his or her share of the gross income of the joint venture should not be considered in deciding the issue. There can be no doubt in this case that if these Debtors' shares of the gross income of the venture, contrary to the position of the UST, are attributed to them, they meet the 80% test of 11 U.S.C. § 101(20).

■ The reference to a "taxable" year indicates the drafters may have had the Internal Revenue Code as possibly a point of reference in the interpretation of the statute. Under the Internal Revenue Code, generally speaking, a partnership (which includes a joint venture), while being required to itself file a tax return, is not itself a separate tax paying entity (unlike a corporation for instance). Rather, it

files essentially an information return listing all of its income and expenses and then issues the appropriate form to each partner listing that partner's shares of the various components of the partnership's net income or loss. The individual partner then inserts that information in the appropriate place(s) on his or her individual return, which together with that individual's income or losses from other sources, make up the taxable income upon which income tax liability is determined. If an individual makes his or her living as a sole proprietor operating a farm, his or her individual return, on Schedule C, will show the farm operation's gross income and expenses. There can be no question that such gross income figure would be the figure (along with the taxpayers' non-farm gross income) that would be used to determine the applicability of the statutory 80% rule.

■ There is no indication the drafters intended that if that same individual was part of a partnership or joint venture that operated the farm, the ultimate tax result should or would be different. Thus, if the farm operation figures for a sole proprietorship were that gross income was $200,000 and expenses were $190,000, the $200,000 figure would be the one used to determine the applicability of the statute. If, however, that same individual was one of two equal partners and the gross income of the partnership farm operation was $400,000 and the expenses were $380,000, the partnership would file its information return showing those figures and issue a form to each partner indicating that partner's share of the partnership's net income to be $10,000. Each partner would then show on that partner's individual tax return, income of $10,000 from that partnership. It would appear that the UST's position is that $10,000, and not $200,000, should be used in determining

whether or not that individual is entitled to be treated as a farmer under the Bankruptcy Code. The $10,000 may be that debtor's "gross" income from the partnership, but only in the very limited, excessively literal sense that it is 100% of what he actually receives or is entitled to from the partnership, but, in economic substance, it is a "net" income figure. It cannot be seen as that debtor's share of the "gross" income of his share of the "gross income ... from a farming operation," to use the statutory language. The term "gross," as used in this connection if it is to be given any significance, is thus important and instructive, and, works against the logic of the position of the UST.

■ The sheer logic of the situation requires the same conclusion. The 80% requirement is a black letter way of dealing with the concept that a true farmer, i.e., one whose intended living is primarily derived from the carrying on of a farm operation to the exclusion of other non-farm activities. It essentially embodies a concept involving the proportion of a person's actual time devoted to that pursuit, as evidenced by the fact it is measured by "gross", rather than "net" income. It is not the financial success of the farming operation that matters.

■■ Rather, the essence and thrust of the provision involves whether it is the Debtor's effort and activity which produces the crops and whether the debtor's efforts are primarily devoted to it, not the type of organization through which the farming operation or those efforts are carried on. The person who runs the tractor or harvesting equipment, etc., is no less a "farmer" if he is a sole proprietor, than he would be doing exactly the same work as a partner, joint venturer, shareholder/employee, or a member of a limited liability company, the essentially exclusive purpose and re-

sources of which are devoted to conducting a farming operation.

■ The foregoing analysis is consistent with other's views of the statute. In *Collier on Bankruptcy*, it is stated in reference to the statute in question that:

> The definition of farmer refers to a "person." Person is defined in the Code to include corporations and partnerships as well as individuals. Accordingly, a corporation or partnership will be considered a farmer if it fulfills the requirements in the definition. The definition also does not require that the debtor be personally engaged in farming. It is sufficient if the debtor own or operate a farming business. The result is that even a large corporate agribusiness can qualify as a farmer.

Lawrence P. King et al., *Collier on Bankruptcy* ¶ 101.20[1] (15th ed. rev. May 2003) (citing *Potmesil v. Alexandria Prod. Credit Ass'n*, 42 B.R. 731 (W.D.La.1984); *In re Blanton Smith Corp.*, 7 B.R. 410 (Bankr.M.D.Tenn.1980)). That same authority further points out that the current statutory language was designed to replace (and broaden) a more restrictive prior provision which was limited to a requirement that the individual himself or herself be the one actually doing the farming.

By reason of the foregoing, the Court concludes that each of the Debtors is a "farmer" within the meaning of the Bankruptcy Code for purposes of precluding conversion of their Chapter 11 cases to Chapter 7 cases.